■ STACY D. SCHREIBER-CROSS, Appellant, v STATE OF NEW YORK, Respondent. [870 NYS2d 438]—

On February 20, 2002 the plaintiff's decedent was killed in a two-car accident at the intersection of Route 25A and Columbia Street in Port Jefferson Station. A notice of intention to file a claim against the State of New York was served on April 11, 2002. Thereafter a timely claim was filed, asserting seven allegations of negligence against the State. Six of these allegations asserted negligence pertaining to the design and/or maintenance of the traffic control device located at the intersection, or the intersection itself. The claim also alleged that the guardrail at the accident site was located at an insufficient distance so as to constitute a danger to vehicles which for any reason left the roadway. The bill of particulars mirrored the claim and, with respect to the guardrail allegation, merely reiterated the contention that the guardrail was a danger due to its proximity to the roadway.

After the deadline to make motions for summary judgment had passed, by order dated May 24, 2005, the Court of Claims allowed the parties to conduct expert disclosure (wherein the claimant designated its expert, to wit, Daniel Burdett), and adjourned the trial date (previously scheduled for May 24, 2005) to August 30, 2005.

Subsequently, the claimant changed attorneys. Less than two weeks prior to the scheduled date for trial, the claimant's new counsel submitted a motion for partial summary judgment and (more pertinent to the instant appeal) leave to amend the bill of particulars and change the designation of the claimant's expert. The motion was returned to the claimant's counsel with an

indication that it was in violation of the court-imposed deadlines and established procedures of the Court of Claims. The claimant commenced a proceeding pursuant to CPLR article 78 to compel consideration of the motion. The Court of Claims rendered that proceeding academic on August 31, 2005, by denying the motion in toto. Rather than proceed to trial, the claimant then moved, inter alia, for recusal of the Court of Claims judge assigned to hear the case. This Court affirmed the order denying that branch of the motion which was for recusal (*see Schreiber-Cross v State of New York*, 31 AD3d 425 [2006]).

The trial commenced on April 27, 2006 and was confined solely to the issue of the alleged defective traffic control device. At the conclusion of the trial the claim was dismissed. The claimant appeals, asserting three bases for the appeal, to wit, that (1) the record established that the traffic control device was the proximate cause of the accident, (2) the Court of Claims erred in denying those branches of the motion which were for leave to amend the bill of particulars and to substitute its designated expert, and (3) the Court of Claims erred in denying the motion to recuse. This last item was subsequently withdrawn via the claimant's reply brief.

The Court of Claims' determination that the claimant failed to establish that the State was negligent in maintaining the traffic signal was supported by the evidence (*see Picarazzi v State of New York*, 95 AD2d 958 [1983]). Moreover, even if we were to agree with the claimant that the Court of Claims erred in denying those branches of the motion which were for leave to amend the bill of particulars and substitute experts, it would not compel a different result on the traffic light claims. The proposed "new expert" indicated, via his report attached to the motion in question, that the primary focus of his testimony would deal with his conclusion that the decedent's head trauma was caused by the defects in the guardrail design and placement. The report of the new expert made only sparse references to the traffic light signal synchronization issue, which was, in any event, more than adequately covered by the expert who testified at trial.

Obviously, the claimant's change of counsel was also related to a radical switch in emphasis on the theory of the State's potential liability. The claimant's first set of attorneys and experts primarily asserted that the decedent's injuries and death were caused by a faulty traffic control device resulting in the intersection collision. The second set of attorneys and experts primarily asserted a theory that the decedent died of head trauma and a ruptured spleen caused by the negligent place-

ment of the guardrail. The Court of Claims was well within its discretion to prevent this eve-of-trial, radical reversal in theories of liability, and its determination should be affirmed.

"While leave to amend a bill of particulars is ordinarily freely given (*see* CPLR 3025 [b]; *Cohen v Ho,* 38 AD3d 705 [2007]), where a motion for leave to amend a bill of particulars alleging new theories of liability not raised in the [claim] or the original bill is made on the eve of trial, leave of court is required, and judicial discretion should be exercised sparingly, and should be discreet, circumspect, prudent, and cautious (*see Cohen v Ho,* 38 AD3d at 705-706; *Lissak v Cerabona,* 10 AD3d at 309-310; *Rosse-Glickman v Beth Israel Med. Ctr.-Kings Hwy. Div.,* 309 AD2d 846 [2003]; *Kassis v Teachers Ins. & Annuity Assn.,* 258 AD2d 271 [1999]; *Volpe v Good Samaritan Hosp.,* 213 AD2d 398, 398-399 [1995]). Moreover, where there has been an unreasonable delay in seeking leave to amend, the [claimant] must establish a reasonable excuse for the delay, and submit an affidavit establishing the merits of the proposed amendment with respect to the new theories of liability (*see Arguinzoni v Parkway Hosp.,* 14 AD3d 633 [2005]; *Rosse-Glickman v Beth Israel Med. Ctr.-Kings Highway Div.,* 309 AD2d at 846). 'In exercising its discretion, the court should consider how long the party seeking the amendment was aware of the facts upon which the motion was predicated, whether a reasonable excuse for the delay was offered, and whether prejudice resulted therefrom' (*Cohen v Ho,* 38 AD3d at 706)" (*Navarette v Alexiades,* 50 AD3d 869, 870-871 [2008]). Moreover, once discovery has been completed and the case has been certified as ready for trial, the party will not be permitted to amend the bill of particulars "except upon a showing of special and extraordinary circumstances" (*McLeod v Duffy,* 53 AD2d 1011, 1012 [1976]; *see also Reynolds v Towne Corp.,* 132 AD2d 952 [1987] [motion to amend bill of particulars to inject new theory was properly denied, where no showing of extraordinary circumstances justified failure to seek amendment until eve of trial]).

Here, the determination of the Court of Claims was in accord with its established procedure. There is no indication that the denial of a motion for failure to abide by the previously court-determined schedule could fairly be considered an improvident exercise of its discretion (*see Thompson v Connor,* 178 AD2d 752 [1991]). Courts have an inherent power to control their calendars (*see Zeitlin v Greenberg, Margolis, Ziegler, Schwartz, Dratch, Fishman, Franzblau & Falkin,* 262 AD2d 406 [1999]). In this case, the Court of Claims was in the best position to determine whether the relief sought was contrary to prior

representations made by the claimant's prior counsel and to balance the rights of the litigants against the demands of its calendar. This Court has been loathe to interfere with such an exercise of discretion (*see Matter of Rattner v Planning Commn. of Vil. of Pleasantville* 156 AD2d 521 [1989]; *Travelers Ins. Co. v New York Yankees,* 102 AD2d 851 [1984]). The change of attorneys on the eve of trial is not, standing alone, a sufficiently exceptional circumstance requiring a limitation on such discretion (*cf., Shumalski v Government Empls. Ins. Co.,* 80 AD2d 975 [1981]).

Substantively, the branches of the motion at issue are without merit. A proposed amendment which is palpably insufficient or patently devoid of merit should not be permitted (*see Morris v Queens Long Is. Med. Group, P.C.,* 49 AD3d 827 [2008]). A close examination of the moving papers shows that the proposed expert's report was devoid of any principles of physics or engineering establishing deficiencies in the guardrail placement for the purposes that guardrails are intended. The Court of Claims properly rejected the expert's conclusion that contact with a light pole rather than the guardrail was more likely to lead to head trauma or spleen rupture. Moreover, the expert's report asserts, without any supporting documentation, that the sole purpose of the guardrail system was primarily to protect cars (and passengers therein) involved in intersection collisions. That ignores the most obvious purpose of a guardrail, to wit, to prevent cars from leaving the vicinity of an impact and to protect persons and property abutting the site. Photographs of the intersection in question clearly show the proximity of numerous buildings all within the penumbra of potential protection afforded by the guardrails. Moreover, given the radical switch in theories two years after the accident, the motion does not even attempt to suggest that no prejudice would be occasioned by the request at issue. Thus, that branch of the claimant's motion which was for leave to amend the bill of particulars, even if considered on the merits, could not have been properly granted. In light of this, determination of the issue of whether that branch of the claimant's motion which was to substitute its designated expert should have been granted has been rendered academic.

Our decision in the case of *Saldivar v I.J. White Corp.* (46 AD3d 660 [2007]), does not compel a different result. Accordingly, the judgment in question should be affirmed. Lifson, J.P., Florio, Carni and Belen, JJ., concur.