■ PETER MACKAUER, Respondent, v DIVYANG PARIKH, M.D., et al., Appellants. [49 NYS3d 488]—

In an action to recover damages for medical malpractice, the defendants appeal, as limited by their brief, from so much of

an order of the Supreme Court, Richmond County (McMahon, J.), dated November 5, 2014, as denied that branch of their motion which was for summary judgment dismissing the complaint.

Ordered that the order is affirmed insofar as appealed from, with costs.

On April 13, 2009, Dr. Divyang Parikh, a gastroenterologist, performed a colonoscopy on the plaintiff. Thereafter, on April 21, 2009, the plaintiff presented to Parikh in a highly emotional state, complaining of nonspecific abdominal pain. Parikh referred the plaintiff to his primary care physician for a psychiatric evaluation. Two days later, on April 23, 2009, the plaintiff presented to the emergency room at Staten Island University Hospital, where he was diagnosed with acute perforated appendicitis.

On or about June 2, 2011, the plaintiff commenced this action to recover damages for medical malpractice against Parikh and his employer, the defendant Digestive Liver Disease Center, alleging, inter alia, that the defendants departed from accepted standards of medical care by perforating the plaintiff's appendix during the April 13, 2009, colonoscopy, and then failing to diagnose him with a perforated appendix during the April 21, 2009, follow-up visit.

At his deposition, the plaintiff testified that he presented to Parikh on April 21, 2009, complaining of severe pain, but Parikh would not allow the plaintiff to lie down during the visit and suggested that he seek psychiatric help. The plaintiff's wife, Donna Mackauer (hereinafter Mackauer), testified at her deposition that she accompanied the plaintiff to the April 21, 2009, follow-up visit, at which time he "was very gray and sweating," had a fever, could barely stand, and was "very emotional" because of his pain. She testified that the plaintiff complained that the pain in his stomach was "worse than it had ever been" and was "very different" from the pain he had experienced before. According to Mackauer, Parikh dismissed the plaintiff's pain as psychological and refused to physically examine him. Parikh prescribed medication to help the plaintiff relax, and advised him to see a psychiatrist.

Parikh testified at his deposition that he first saw the plaintiff on April 24, 2008. At that time, the plaintiff reported, inter alia, a two-year history of pain with bloating and burning, mainly localized in the upper abdomen. After a series of visits and tests, on March 31, 2009, the plaintiff complained of abdominal pain in the right upper quadrant, heaviness, indigestion, nausea, and bloating after meals. Parikh advised

the plaintiff of the need for a colonoscopy and an esophagogastroduodenoscopy (hereinafter EGD) for further evaluation of his gastrointestinal complaints. In his report for the visit, Parikh noted that the plaintiff exhibited "abnormal behavior," and that "[i]nitially he started crying and by the end of the office visit he was laughing." On April 13, 2009, Parikh performed a colonoscopy and EGD on the plaintiff, resulting in a diagnosis of, inter alia, mild diverticulosis. On April 18, 2009, Parikh received a phone call from Mackauer, who informed him that the plaintiff was very anxious and asked Parikh for his help in counseling the plaintiff to seek a psychiatric evaluation. Parikh advised Mackauer to accompany the plaintiff to his next visit. On April 21, 2009, the plaintiff presented for a follow-up visit, accompanied by his wife. Parikh noted that the plaintiff was crying and complaining of nonspecific abdominal pain. Parikh directed the plaintiff to consult with his primary care physician for a psychiatric evaluation. Parikh further testified that the plaintiff's chief complaint of nonspecific abdominal pain was the same type of pain he had complained of prior to the colonscopy, i.e., abdominal bloating and excessive flatulence. Based upon his review of the medical records, Parikh opined that the appendicitis was not related to the colonoscopy, and the plaintiff "must have developed acute appendicitis on the day he went to the emergency room."

The plaintiff served a "supplemental" bill of particulars dated April 29, 2014, asserting, inter alia, the following additional theories of malpractice: "failure to perform a physical evaluation on th[e] plaintiff when plaintiff presented to the defendant's office on April 21st, 2009 complaining of pain; negligently attributing the plaintiff's abdominal pain as a psychotic episode; . . . failure to refer the plaintiff to the emergency room at the April 21st, 2009 visit, refusing to evaluate the plaintiff at the 4/21/09 visit; allowing the plaintiff's condition to worsen; failure to appreciate the significant [sic] of the plaintiff's abdominal pain; failure to conduct tests to determine the cause of the plaintiff's abdominal pain; failure to appreciate the significant [sic] of severe abdominal pain in a patient who underwent a colonoscopy." The plaintiff filed a note of issue and certificate of readiness for trial dated April 30, 2014.

By notice of motion dated June 23, 2014, the defendants moved, inter alia, for summary judgment dismissing the complaint. The Supreme Court denied that branch of the defendant's motion. The defendants appeal. We affirm.

A physician moving for summary judgment dismissing a complaint alleging medical malpractice must establish, prima

facie, either that there was no departure from accepted standards of medical care or that any departure was not a proximate cause of the plaintiff's injuries (see *Uchitel v Fleischer*, 137 AD3d 1111, 1112 [2016]; *Senatore v Epstein*, 128 AD3d 794, 795 [2015]). In order to sustain this burden, the defendant must address and rebut any specific allegations of malpractice set forth in the plaintiff's bill of particulars (see *Wall v Flushing Hosp. Med. Ctr.*, 78 AD3d 1043, 1044-1045 [2010]; *Grant v Hudson Val. Hosp. Ctr.*, 55 AD3d 874, 874 [2008]). Once this showing has been made, the burden shifts to the plaintiff to submit evidentiary facts or materials to rebut the defendant's prima facie showing, but only "as to those elements on which the defendant met the prima facie burden" (*Harris v Saint Joseph's Med. Ctr.*, 128 AD3d 1010, 1012 [2015]; see *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Uchitel v Fleischer*, 137 AD3d at 1112; *Stukas v Streiter*, 83 AD3d 18, 30 [2011]).

Here, the defendants demonstrated their prima facie entitlement to judgment as a matter of law dismissing the complaint by submitting, inter alia, the expert affirmation of Dr. James Grendell, a gastroenterologist, who opined that the defendants did not depart from accepted standards of care in performing the colonoscopy and did not perforate the plaintiff's appendix (see *Stukas v Streiter*, 83 AD3d at 30). Further, Grendell opined, with a reasonable degree of medical certainty, that the plaintiff was provided with proper care and "did not exhibit any signs or symptoms of appendicitis on April 21, 2009" when he was examined by Parikh.

In opposition, the plaintiff raised a triable issue of fact (see *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]) through the submission of, inter alia, the expert affirmation of Dr. David Zimmon, a gastroenterologist. Although Zimmon acknowledged that the plaintiff's appendix was not perforated during the colonoscopy, he opined that Parikh departed from the standard of care by failing to diagnose the plaintiff with appendicitis during the April 21, 2009, follow-up visit, and that this departure directly caused the plaintiff to suffer severe complications associated with a perforated appendix. Zimmon disagreed with Grendell's conclusion that the plaintiff did not exhibit any signs or symptoms of appendicitis on April 21, 2009, noting that, based upon his review of the plaintiff's and Mackauer's deposition testimony, there was a question as to whether Parikh actually examined the plaintiff at all on that date. Zimmon opined: "The type of severe pain the plaintiff felt on April 21st, is evidence of an obstructed appendix before rupture or abscess formation." Considering the progression of

the plaintiff's appendix rupture and early abscess formation shortly after his admission to Staten Island University Hospital, Zimmon concluded that an earlier diagnosis would have led to a better outcome for the plaintiff.

Contrary to the defendants' contention, the plaintiff's "supplemental" bill of particulars adequately set forth the plaintiff's theory that the defendants negligently failed to diagnose him with appendicitis. Although the bill of particulars was denominated as a "supplemental" bill of particulars, which may not be used to articulate a new theory of liability (see CPLR 3043 [b]; Hageman v Home Depot U.S.A., Inc., 45 AD3d 730, 731 [2007]), the plaintiff was entitled to "amend" his bill of particulars once as of right at any time prior to filing the note of issue (CPLR 3042 [b]; see Leon v First Natl. City Bank, 224 AD2d 497, 498 [1996]). We may disregard the plaintiff's mistake in labeling his bill of particulars as a "supplemental" bill where, as here, a substantial right of a party will not be prejudiced (see CPLR 2001; Grskovic v Holmes, 111 AD3d 234, 242-243 [2013]; see also Johnson v Gaughan, 128 AD2d 756, 756 [1987]). The supplemental bill of particulars was filed approximately 54 days before the defendants moved, inter alia, for summary judgment and, notably, the defendants' expert addressed the plaintiff's failure-to-diagnose theory when he opined that the plaintiff "did not exhibit any signs or symptoms of appendicitis on April 21, 2009." Moreover, the defendants did not reject the supplemental bill of particulars when it was served upon them, and have not claimed that they would be prejudiced by treating it as an amended bill of particulars.

The defendant's contentions regarding the plaintiff's delay in amending his bill of particulars are misplaced. While it is true that "once discovery has been completed and the case has been certified as ready for trial, [a] party will not be permitted to amend the bill of particulars 'except upon a showing of special and extraordinary circumstances' " (Schreiber-Cross v State of New York, 57 AD3d 881, 884 [2008], quoting McLeod v Duffy, 53 AD2d 1011, 1012 [1976]), no such showing is required where a bill of particulars is amended as of right before the note of issue and certificate of readiness have been filed. The as-of-right amendment of a bill of particulars has been appropriately compared to the as-of-right amendment of a pleading: "Presumably this amendment [pursuant to CPLR 3042 (b)] can make any change in the bill, just as an amendment as of course can make any change in a pleading under CPLR 3025 (a). But the latter is restricted in time to the outset of the action while CPLR 3042 (b) keeps the bill's amendment time open during

the whole pre-note of issue period" (Siegel, NY Prac § 240 [5th ed Jan. 2017 update]).

Additionally, we disagree with the conclusion of our dissenting colleagues that the plaintiff's supplemental bill of particulars failed to place the defendants on notice of his theory that Parikh departed from the accepted standard of care by failing to diagnose the plaintiff with appendicitis at the April 21, 2009, follow-up visit. Despite the absence of the word "appendicitis," the supplemental bill of particulars adequately sets forth an alternate theory that Parikh deviated from the accepted standard of care on April 21, 2009, by failing to perform a more thorough evaluation or to diagnose the source of the plaintiff's abdominal pain. While the dissent concludes that the supplemental bill did not place the defendants on notice that this failure-to-diagnose theory was "free-standing" from the plaintiff's theory that the appendix was perforated during the April 13, 2009, colonoscopy, this is a distinction without a difference, as a plaintiff is permitted to pursue independent and overlapping theories of liability, with each discrete departure requiring separate consideration by a jury (*see Steidel v County of Nassau*, 182 AD2d 809, 813 [1992]; *see also Davis v Caldwell*, 54 NY2d 176 [1981]; NY PJI 2:150, Comment, Caveat 1).

While, in certain circumstances, "a plaintiff may successfully oppose a motion for summary judgment by relying on an unpleaded cause of action which is supported by the plaintiff's submission" (*Langan v St. Vincent's Hosp. of N.Y.*, 64 AD3d 632, 633 [2009]; *see Alvord & Swift v Muller Constr. Co.*, 46 NY2d 276, 281 [1978]), here, the plaintiff's theory that Parikh failed to diagnosis him with appendicitis was adequately set forth in his supplemental bill of particulars and, therefore, was not a new theory of liability raised for the first time in opposition to the defendant's motion. In any event, the failure-to-diagnose theory was a claim that the defendants anticipated and addressed in their motion for summary judgment. Under these circumstances, a jury should be permitted to determine whether the plaintiff in fact presented to Parikh with the signs and symptoms of appendicitis and, if so, whether Parikh's failure to diagnose the plaintiff with appendicitis constituted medical malpractice.

Accordingly, the Supreme Court properly denied that branch of the defendants' motion which was for summary judgment dismissing the complaint. Cohen, Hinds-Radix and Connolly, JJ., concur.

Dillon, J.P., dissents and votes to reverse the order insofar as appealed from, on the law, and grant that branch of the de-

fendants' motion which was for summary judgment dismissing the complaint, with the following memorandum, in which Roman, J., concurs: In my view, the order appealed from should be reversed and that branch of the defendants' motion which was for summary judgment dismissing the complaint should be granted.

On April 13, 2009, the plaintiff underwent a colonoscopy during which his appendix allegedly was perforated. In June 2011, the plaintiff commenced this action against Dr. Divyang Parikh, who performed the procedure, and Parikh's employer, Digestive Liver Disease Center. The complaint contained general allegations that the defendants were negligent and deviated from accepted standards of care in treating the plaintiff. Paragraph 2 of the plaintiff's original bill of particulars, dated January 3, 2012, specified that the defendants' departures from the accepted standards of care were the perforation of the appendix during the colonoscopy and the failure to advise the plaintiff of such risks. In the plaintiff's second bill of particulars, dated April 29, 2014, and labeled as "supplemental," the plaintiff reiterated that the theory of liability was the perforation of the appendix during the colonoscopy, along with the defendants' independent failure to diagnose the surgically caused perforation during a follow-up office visit on April 21, 2009. Questions posed to Parikh during his deposition focused in significant measure upon the colon and the appendix, and the proximity and relationship between the two, and were specifically directed at whether and how a physician performing a colonoscopy would depart from accepted practice by perforating the appendix during the procedure.

In June 2014, the defendants moved, inter alia, for summary judgment dismissing the complaint. In support, they submitted, inter alia, an affirmation from their expert, Dr. James Grandell, who, based upon hospital, medical, and other documentation, opined that the plaintiff had developed appendicitis unrelated to the colonoscopy procedure.

In opposition, the plaintiff proffered the expert affirmation of Dr. David Zimmon, who acknowledged, contrary to the plaintiff's previously alleged theory of liability, that Parikh was not negligent in performing the colonoscopy and that the plaintiff's appendix was not perforated during the colonoscopy, as he did not develop severe lower abdominal pain until four days after the procedure. Rather, the plaintiff alleged for the first time, through Zimmon's affirmation, that the defendants departed from the accepted standard of care by failing to make a diagnosis of appendicitis during the plaintiff's postsurgical follow-up office visit on April 21, 2009.

In the order appealed from, the Supreme Court, inter alia, denied that branch of the defendants' motion which was for summary judgment dismissing the complaint.

While we agree with our colleagues in the majority that the defendants established their prima facie entitlement to judgment as a matter of law dismissing the complaint, we disagree with their conclusion that the plaintiff raised a triable issue of fact. The well-recognized purpose of a bill of particulars is to amplify the pleadings, limit proof, and prevent surprise at trial (*see Suits v Wyckoff Hgts. Med. Ctr.*, 84 AD3d 487, 489 [2011]; *Harris v Ariel Transp. Corp.*, 37 AD3d 308, 309 [2007]; *Moran v Hurst*, 32 AD3d 909, 912 [2006]; *Castellano v Norwegian Christian Home & Health Ctr., Inc.*, 24 AD3d 490, 491 [2005]; *Batson v La Guardia Hosp.*, 194 AD2d 705, 706 [1993]). Responses must clearly detail the specific acts of negligence attributed to the defendants (*see Suits v Wyckoff Hgts. Med. Ctr.*, 84 AD3d at 489; *Miccarelli v Fleiss*, 219 AD2d 469, 470 [1995]; *Batson v La Guardia Hosp.*, 194 AD2d at 706). Theories of liability not set forth in the complaint or in the bill of particulars are not part of the case, and an attempt to assert them in an expert affirmation in opposition to summary judgment is impermissible (*see Michel v Long Is. Jewish Med. Ctr.*, 125 AD3d 945, 946 [2015]).

Here, the complaint contained only general allegations of negligence and medical malpractice. Thereafter, the original and "supplemental" bills of particulars specifically alleged that the plaintiff's appendix was perforated during the colonoscopy. The plaintiff's "supplemental" bill of particulars referred to a perforation 8 times and to the colonoscopy 12 times. Neither bill ever made any mention of appendicitis or of the defendants' failure to diagnose appendicitis. Although both the original and "supplemental" bills of particulars contained other broad, generalized language, none of it can be reasonably construed as having placed the defendants on notice that failing to diagnose appendicitis one week after the colonoscopy was, in any way, related to the plaintiff's theory of liability that the appendix was perforated during the colonoscopy or that it was a free-standing theory of liability. Thus, as to a failure to diagnose appendicitis, both the original and "supplemental" bills of particulars placed before the Supreme Court failed to fulfill the purpose of amplifying pleadings, limiting proof, and preventing surprise at trial (*see Sealy v Uy*, 132 AD3d 839, 840 [2015]; *Batson v La Guardia Hosp.*, 194 AD2d at 706; *Gannotta v Long Is. Coll. Hosp.*, 92 AD2d 930 [1983]). For that reason, I disagree with my colleagues in the majority

that the plaintiff's "supplemental" bill of particulars placed before the court a failure to diagnose appendicitis claim because, as to that significant discrete issue, the document is instead a mere "supplemental bill of generalizations," which is inadequate.

The plaintiff's new theory of liability regarding appendicitis was alleged for the first time in late September 2014, three years after the commencement of the action, five months after the filing of the note of issue, and in opposition to the defendants' motion, inter alia, for summary judgment. In light of the plaintiff's protracted delay in presenting the new theory of liability, it should not have been considered by the Supreme Court (*see Horn v Hires*, 84 AD3d 1025 [2011]; *Langan v St. Vincent's Hosp. of N.Y.*, 64 AD3d 632, 633 [2009]; *Yousefi v Rudeth Realty, LLC*, 61 AD3d 677, 678 [2009]; *Gallello v MARJ Distribs., Inc.*, 50 AD3d 734, 736 [2008]; *Medina v Sears, Roebuck & Co.*, 41 AD3d 798, 799-800 [2007]; *Comsewogue Union Free School Dist. v Allied-Trent Roofing Sys., Inc.*, 15 AD3d 523, 524 [2005]).

For the foregoing reasons, I vote to reverse the order insofar as appealed from.