| |
|---|
| **Jian Y. Lin v Chan** |
| 2024 NY Slip Op 32221(U) |
| July 1, 2024 |
| Supreme Court, Kings County |
| Docket Number: Index No. 518263/16 |
| Judge: Genine D. Edwards |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

At an IAS Term, Part 80 of the Supreme Court of
the State of New York, held in and for the County
of Kings, at the Courthouse, at 360 Adams Street,
Brooklyn, New York, on the 1st day of July 2024.

PRESENT:

HON. GENINE D. EDWARDS,
                              Justice.

------------------------------------------------------------------X

JIAN Y. LIN,

                              Plaintiff,

            -against-

IAN CHAN, M.D., IAN CHAN, M.D., P.C,
NEW YORK EYE & EAR INFIRMARY OF MOUNT SINAI,
and KEITH CHANG, M.D.,

                              Defendants.

------------------------------------------------------------------X

DECISION AND ORDER

Index No. 518263/16

Mot. Seq. Nos. 11-12

The following e-filed papers read herein:                    NYSCEF Doc Nos.:

Notice of Motion, Affirmations, and Exhibits..............................255-270; 271-274
Affirmations in Opposition and Exhibits................................275-281; 282-289; 290-292
Reply Affirmation......................................................294

In this action to recover damages for negligence, medical malpractice, and failure to obtain informed consent, plaintiff Jian Y. Lin ("plaintiff") moved for leave, pursuant to CPLR 2221 (d), to reargue the prior motion of defendants Ian Chan, M.D., and Ian Chan, M.D., P.C. (collectively, "Dr. Chan"), and the prior motion of defendant Keith Chang, M.D. ("Dr. Chang"), which, in each instance, sought summary judgment dismissing all of plaintiff's claims as against such defendant, and, upon reargument, denying the entirety of both prior motions and modifying the Court's Decision and Order, dated February 1, 2024 (the "prior order"), accordingly.[1] Concurrently, defendant New York Eye & Ear Infirmary of Mount Sinai ("NYEEI") moved for leave, pursuant to CPLR 2221 (d), to reargue its prior motion, which sought summary judgment dismissing all of plaintiff's claims as against it ("NYEEI's prior motion"), and, upon reargument, granting the entirety of its prior motion or, in the alternative, granting the portion of its prior motion to the extent of

---

[1] For ease of analysis, the Court rearranged plaintiff's grounds for relief.

[* 1]

dismissing all of plaintiff's claims as against it to her care and treatment before May 13, 2015, and modifying the prior order accordingly. Opposition was submitted as to both motions. Both motions were fully submitted on June 7, 2024, and the Court reserved decision.

## Standard of Review

"A motion for leave to reargue is directed to the trial court's discretion and, to warrant reargument, the moving party must demonstrate that the court overlooked or misapprehended the relevant facts or misapplied a controlling principle of law." *Fuentes v. 257 Toppings Path, LLC*, 225 A.D.3d 744, 208 N.Y.S.3d 206 (2d Dept. 2024) (internal quotation marks omitted; emphasis added). Put otherwise, "[a] motion to reargue is based on no new proof; it seeks to convince the court that it overlooked or misapprehended something on the first go around and ought to change its mind." Siegel, New York Practice § 254 (6th ed 2023) (online edition).

For the reasons stated below, it is within the Court's discretion to grant plaintiff leave to reargue the branch of her motion that sought to reargue Dr. Chan's prior motion (but not to reargue Dr. Chang's prior motion) and, further, to grant NYEEI leave to reargue its prior motion. *See e.g. Dray v. Staten Is. Univ. Hosp.*, ___ A.D.3d ___, 210 N.Y.S.3d 275, (2d Dept. 2024); *U.S. Bank N.A. v. Sallie*, 215 A.D.3d 714, 187 N.Y.S.3d 696 (2d Dept. 2023).

## Reargument of Dr. Chan's Prior Motion

As noted, the initial branch of plaintiff's motion sought reargument of Dr. Chan's prior motion. As was relevant to Dr. Chan, the prior order differentiated between *the fifth surgery* on the one hand, and *the first, second, third, and fourth surgeries* on the other hand. With respect to *the fifth surgery*, the prior order (at pages 10-11) *denied* the branch of Dr. Chan's prior motion which was dismissal of plaintiff's negligence, medical malpractice, and informed consent claims as against him. Because the denial of Dr. Chan's prior motion insofar as predicated on *the fifth surgery* was favorable to plaintiff (and,

2

what's more, Dr. Chan failed to move for leave to reargue his prior motion), the Court construes the branch of plaintiff's instant motion for leave to reargue Dr. Chan's prior motion as having been directed to *the first, second, third, and fourth surgeries.*

With respect to the first surgery, the prior order held that plaintiff failed to rebut Dr. Chan's prima facie showing of entitlement to judgment as a matter of law. In that regard, the prior order (at pages 9-10) rejected plaintiff's contention that Dr. Chan's first surgery should have been in the form of scleral buckling alone (rather than the combined primary vitrectomy, post-operative intraocular tamponade with silicone oil, and supplemental scleral buckling) because the decision as to which type of surgery to perform fell within the spectrum of Dr. Chan's professional judgment as a vitreoretinal surgeon. Further, the prior order (at page 10) rejected plaintiff's lack of informed consent claim as to the first surgery, noting (at page 10) that "the consents were signed, and [that] no complaints were made by the plaintiff regarding her consent to the [first] . . . surger[y]." Lastly, the prior order (at page 10) held that [p]laintiff's [retinal] expert offered conclusory and speculative statements that failed to raise a triable issue of fact as to [her] claims of negligence, malpractice and informed consent regarding Dr. Chan's care, treatment, and his [first] . . . surger[y] . . . and failed to address or rebut specific assertions made by [Dr. Chan's expert]."

Contrary to Dr. Chan's contention in his prior motion, plaintiff did not improperly advance, for the first time in her opposition to his prior motion, her previously unpleaded theory that he should have performed scleral buckling alone, instead of the first surgery which he actually performed (*i.e.,* the combined primary vitrectomy, post-operative intraocular tamponade with silicone oil, and supplemental scleral buckling) (the "scleral-buckling theory"). The general rule is that "[a] plaintiff cannot, for the first time in opposition to a motion for summary judgment, raise a new or materially different theory of recovery against a party from those pleaded in the complaint and the bill of particulars." *Palka v. Village of Ossining,* 120 A.D.3d 641, 992 N.Y.S.2d 273 (2d Dept. 2014). "If the theory is discernable from the pleadings, [however,] it may be considered, especially if the

3

[* 3]

theory is referred to in the depositions." *Larcy v. Kamler*, 185 A.D.3d 564, 127 N.Y.S.3d 122 (2d Dept. 2020) (internal citations omitted). Such exception is consistent with the overarching principle that the "[u]se of an unpleaded defense in a summary judgment motion is not prohibited as long as the opposing party is not taken by surprise and does not suffer prejudice thereby." *Rosario v. City of New York*, 261 A.D.2d 380, 689 N.Y.S.2d 519 (2d Dept. 1999). *See also Mainline Elec. Corp. v. Pav-Lak Indus., Inc.*, 40 A.D.3d 939, 836 N.Y.S.2d 294 (2d Dept. 2007) ("a plaintiff may successfully oppose a motion for summary judgment by relying on an unpleaded cause of action which is supported by [his or her] submissions").

Here, although plaintiff did not advance the scleral-buckling theory either in her complaint or her initial and amended/supplemental bills of particulars, plaintiff's counsel extensively questioned Dr. Chan at his deposition as to why he decided to perform the first surgery as the combined primary vitrectomy, post-operative intraocular tamponade with silicone oil, and supplemental scleral buckling – instead of performing scleral buckling alone – as more fully reproduced in the margin.[2] Thus, Dr. Chan could not have been

---

[2] *See generally* Dr. Chan's deposition tr at page 33, line 21 to page 41, line 9. *See* Dr. Chan's deposition tr at page 39, lines 20-23 ("In my opinion, performing a vitrectomy with a scleral buckle increases the chances of [retinal] reattachment in more complicated cases of retinal detachment."); page 40, lines 6-10 (testifying that "*[s]ometimes, but depending on the clinical situation,*" it "*is possible to do only a scleral buckle and still have a good chance of [retinal] reattachment*"); page 78, line 22 to page 79, line 2 ("*Q. Could [plaintiff's] retinal detachment have been repaired doing only a scleral buckling? A. The answer is maybe, but I don't think so.*"); page 81, line 22 to page 82, line 6 ("Q. [I]n this case, why did you decide to do both the scleral buckling and also the PPV [vitrectomy]? A. Because I want to do everything I can to repair a retinal detachment that is very complex based on the [plaintiff's] age, chronicity of the retinal detachment, also *[her] possible Stickler syndrome,* [her] family history and [her] retinal tears in the other [right] eye."); page 99, lines 10-17 (testifying that "*[p]lacing the [scleral] buckle simply supports the vitreous base to increase the chance of the whole entire procedure success rate. Performing the scleral buckle alone, I do not believe will make [plaintiff's] retinal tear resolve. . . .* It's part of the big picture.") (italics and underlining added).

In reference to the "Stickler syndrome," Dr. Chan explained that the "Stickler syndrome is a multisystemic [genetic] disease affecting the eye, causing myopia" (Dr. Chan's deposition tr at page 41, lines 12-14; page 42, line 8). Dr. Chan further explained that patients with the Stickler syndrome have a vitreous abnormality, although he was "uncertain of its clinical significance." Dr. Chan's deposition tr at page 43, line 18 to page 44, line 2. "Stickler syndrome" is a form of "hereditary progressive arthroophthalmopathy," which is a "[d]isease affecting joints and eyes." Stedman's Medical Dictionary,

(footnote continued)

[* 4]

prejudiced or surprised by plaintiff's reliance on the scleral-buckling theory in opposition to his prior motion. Accordingly, the Court, on reargument, is permitted to consider plaintiff's scleral-buckling theory in her opposition to Dr. Chan's prior motion. *See Refuse v. Wehbeh*, 167 A.D.3d 956, 89 N.Y.S.3d 302 (2d Dept. 2018); *Osipova v. Silverberg*, 152 A.D.3d 614, 58 N.Y.S.3d 522 (2d Dept. 2017); *Weiss v. Metropolitan Suburban Bus Auth.*, 106 A.D.3d 727, 964 N.Y.S.2d 581 (2d Dept. 2013). *See also Mackauer v. Parikh*, 148 A.D.3d 873, 49 N.Y.S.3d 488 (2d Dept. 2017); *Valenti v. Camins*, 95 A.D.3d 519, 943 N.Y.S.2d 504 (1st Dept. 2012) (relied on by the Second Judicial Department in *Larcy v. Kamler*, 185 A.D.3d 564, and *Osipova v. Silverberg*, 152 A.D.3d 614).[3]

Contrary to Dr. Chan's further contention,[4] the "error in judgment" doctrine did not apply to his selection of the type of the first surgery in the form of the combined primary vitrectomy, post-operative intraocular tamponade with silicone oil, and supplemental scleral buckling.[5] Crediting the opinion of plaintiff's retinal expert (as reproduced below), the Court finds, on reargument, that the application of the "error in judgment" doctrine was inappropriate to Dr. Chan's selection of the type of the first surgery because, at the time, he was not presented with a choice between (or among) one of two or more *medically acceptable* alternative treatments or techniques. *See Lacqua v. Silich*, 141 A.D.3d 690, 35 N.Y.S.3d 488 (2d Dept. 2016); *see also Schuster v. Sourour*, 207 A.D.3d 491, 171 N.Y.S.3d 551 (2d Dept. 2022).[6] According to plaintiff's retinal expert (in ¶ 23 of his/her affirmation), Dr. Chan violated a fundamental maxim of vitreoretinal surgery that the simplest method for reattaching the retina – here, scleral buckling – was the best choice,[7] whereas "performing anything more than a scleral buckle [which was actually

---

entries 882380 and 76090 (online edition). Contrary to NYEEI's anesthesiology expert's contention (in ¶ 19 of his affirmation), plaintiff did *not* have a "diagnosis" of Stickler syndrome.

[3] *Compare Feteha v. Scheinman*, 169 A.D.3d 871, 94 N.Y.S.3d 371 (2d Dept. 2019) ("[T]he plaintiff's medical expert admitted multiple times that the defendant performed an *accepted* brachioplasty surgery that falls within the standard of care for such procedures. Such admissions were fatal to the plaintiff's establishment of a prima facie case on the issue of liability for medical malpractice" (emphasis added)."

[* 5]

what Dr. Chan did] was a departure from good and accepted ophthalmological practice."

As plaintiff's retinal expert explained:

> "[T]he [type of the first surgery] performed by Dr. Chan on April 6, 2014, was contraindicated because of the high risks associated with that procedure to treat a condition which is appropriately treated using a far less invasive and risky procedure. Simply said, *Dr. Chan should not have performed a vitrectomy on April 6, 2014* [as the first surgery]. A vitrectomy is a procedure to remove the vitreous. While in older people, retinal detachments are caused by separating vitreous, *in young people, such as [plaintiff] who was only 21 years of age at the time of the treatment in question, the vitreous is adherent and should not be removed.* In younger patients, detachments like that of [plaintiff] are caused by little holes and are generally slowly progressive and not aggressive. *When the vitreous is adherent, as [was the case] in this [plaintiff], a vitrectomy is contraindicated given the unacceptably high risks associated with this procedure. Instead, a scleral buckle must be performed. In this case, plaintiff had a round hole in lattice with an inferior retinal detachment, macular sparing, and no posterior vitreous detachment. As such, the vitreous could not have been causing traction. In fact, the vitreous was not separated from the retina, there was no vitreous separation at all. This surgery [as was performed by Dr. Chan on April 6, 2014] was too aggressive to treat a very small retinal defect and created a dangerous cascade of events which led to more surgery* and the ultimate loss of plaintiff's left eye which was an unfortunate (but not

---

[4] *See* Dr. Chan's counsel's Reply Affirmation, Point IV.

[5] The point of contention here was Dr. Chan's selection of the type of the first surgery for plaintiff to undergo of her primary eye in consideration of his in-office examination on April 4, 2014, rather than his technical performance of the first surgery at NYEEI on April 6, 2014.

[6] *See* NY Pattern Jury Instr. – Civil 2:150, Caveat 2 ("The ['error in judgment'] should not be charged unless there is a showing that defendant considered and chose among several medically acceptable alternatives. *The fact that defendant physician's diagnosis or treatment involved the exercise of medical judgment does not by itself provide a basis for giving an 'error in judgment' charge. Further, it is improper to give the 'error in judgment' charge when the evidence simply raises the issue of whether defendant physician deviated from the degree of care that a reasonable physician would have exercised under the same circumstances.*") (internal citations omitted; emphasis added).

[7] Assuming the correctness of the opinion of Dr. Chan's expert, Steven Rose, M.D. ("Dr. Rose"), in ¶ 24 of the latter's affirmation, that "during the [first surgery], Dr. Chan correctly placed the scleral buckle and even ensured it was at the proper height and location to make the proper indentation needed," then Dr. Chan should have left good enough alone. Further and contrary to Dr. Rose's opinion, no surgical relief of the alleged vitreous traction was needed because, as plaintiff's retinal expert noted in ¶ 21 of his/her affirmation, no such traction existed.

6

unanticipated) outcome of a procedure that never should have been performed for this patient. *Plaintiff would have benefit[t]ed from a simple scleral buckle procedure, and . . . had this procedure been performed at the outset [, plaintiff's] small retinal defect would have been repaired and she would not have lost vision in her left eye.*

Significantly, Dr. Chan noted that [plaintiff's] left [or primary] eye macula was still on, [her primary eye] retina only had a minor detachment, therefore, *there was no need for such an aggressive and risky surgery [which Dr. Chan performed].*"

Plaintiff's retinal expert's affirmation, ¶¶ 21-22 (italics and underlining added).

On reargument, the Court further finds that the plaintiff's lack of informed consent claim, insofar as it applies to *the first surgery*, should be determined by the jury. With respect to the lack of informed consent for the first surgery, Dr. Chan's expert (Dr. Rose) opined that "[t]he only alternative for [plaintiff] was to forego [Dr. Chan's proposed] surgery to repair her retina, which surely would have led to permanent lost vision."[8] In that regard, Dr. Chan's expert (Dr. Rose) opined that "[t]he only alternative – not doing the [first] surgery – would surely lead to permanent blindness, and no reasonable person would opt to pass up the potential chance to restore some amount of vision. As such, it is my opinion [that] plaintiff's lack of consent claim [to the first surgery] has no merit given the circumstances in this case."[9]

At odds with Dr. Rose's position, however, plaintiff's retinal expert opined that her consent to *the first surgery* was not properly obtained. In that regard, plaintiff's retinal expert opined that:

"I further disagree with [Dr. Chan's] contention that [plaintiff] was provided proper and sufficient information and obtained informed consent [to the first

---

[8] *See* Dr. Rose's affirmation, ¶ 14.

[9] *See* Dr. Rose's affirmation, ¶ 19. Dr. Rose further opined that he found "entirely unbelievable" plaintiff's deposition testimony that Dr. Chan failed to discuss the risks of and alternative treatments to retinal detachment repair surgery. It is well-established, however, that witness credibility could not be resolved on a motion for summary judgment. *See e.g. Williams v County of Suffolk*, 215 A.D.3d 893, 187 N.Y.S.3d 307 (2d Dept. 2023).

[* 7]

surgery]. The chart reflects that . . . vitrectomy was the only treatment option presented to [plaintiff]. There is nothing in the chart that shows that she was provided with alternatives to the [first surgery] . . . performed as required by the standard of [vitreoretinal surgery] care. [Dr. Chan's expert, Dr. Rose] further claims that Dr. Chan obtained informed consent [to the first surgery]. However, this is in direct contradiction with plaintiff's and plaintiff's mother's testimony. Indeed, both stated that forms were signed but risks, benefits and alternatives were not discussed. Also, contrary to [Dr. Chan's] assertion that no reasonable person would forgo th[e] [first] surgery, a reasonable person, in fact, would not have pursued a surgical treatment course that was contraindicated and posed an unacceptably high-risk to a patient. . . . Had plaintiff known that a simple scleral buckle was available, indicated[,] and would have corrected her vision and retinal defect without posing unacceptably high risks to [plaintiff] as the [first surgery which] Dr. Chan performed . . . , this is what she would have opted for. . . . , rather than having the back of her eye entered and scraped [as part of vitrectomy]. . . . In sum, the records and testimony reflect that *[plaintiff] was only offered [as the first surgery] the higher risk contraindicated procedure, a pars plana vitrectomy, and was never offered a simple scleral buckle which any reasonable patient would have chosen given the comparative risks and benefits.*"

\* \* \*

[Dr. Chan's] expert incorrectly states that the only alternative to treat plaintiff was to forgo surgery to repair the retina. However, the indicated (and only proper) course of treatment for this patient would have been to perform a scleral buckle *without all the added procedures* Dr. Chan chose to perform."

Plaintiff's retinal expert's affirmation, ¶¶ 24, 26 (emphasis added).

The Court finds that Dr. Chan failed to establish his prima facie entitlement to judgment as a matter of law dismissing the cause of action alleging lack of informed consent to *the first surgery*. "The mere fact that the plaintiff signed a consent form does not establish the [defendant's] prima facie entitlement to judgment as a matter of law." *Schussheim v. Barazani*, 136 A.D.3d 787, 24 N.Y.S.3d 756 (2d Dept. 2016). Dr. Chan owed plaintiff a duty of full disclosure of all potential surgical alternatives, irrespective of his professional and personal preferences.

Neither of the separate consent forms provided to plaintiff by Dr. Chan and NYEEI for *the first surgery* (and each signed by her) offered her scleral buckling alone as a surgical

8

alternative. The deposition testimony of plaintiff and Dr. Chan, which was submitted by Dr. Chan in support of his prior motion, reflected that he did not offer plaintiff an option of undergoing scleral buckling alone. Further, Dr. Chan failed to establish, prima facie, that if plaintiff had received full disclosure regarding scleral buckling alone, she still would have opted for a much more complex combination of primary vitrectomy, post-operative intraocular tamponade with silicone oil, and supplemental scleral buckling. Because Dr. Chan failed to eliminate all triable issues of fact on plaintiff's lack of informed consent cause of action as predicated on *the first surgery*, the Court, on reargument, denied the branch of Dr. Chan's prior motion which was for summary judgment dismissing the cause of action alleging lack of informed consent insofar as predicated on *the first surgery*, regardless of the sufficiency of plaintiff's opposition papers, as more fully set forth in the decretal paragraphs below. Since there were questions of fact on the issue of lack of informed consent as predicated on *the first surgery*, Dr. Chan was not entitled to summary judgment dismissing such cause of action. *See Schussheim v. Barazani*, 136 A.D.3d 787; *Walker v. St. Vincent Catholic Med. Ctrs.*, 114 A.D.3d 669, 979 N.Y.S.2d 697 (2d Dept. 2014); *D'Esposito v. Kung*, 65 A.D.3d 1007, 885 N.Y.S.2d 507 (2d Dept. 2009).

Dr. Chan's assertion that plaintiff's retinal expert's opinions as to *the first surgery* were "conclusory and speculative," lacked merit. To the contrary, plaintiff's retinal expert opined that Dr. Chan's performance of vitrectomy as part of *the first surgery* fell below the accepted standards of vitreoretinal surgical care, as follows:

[¶ 24] "*[V]itrectomy is irreversible,* vitreous does not grow back once removed, and it is well known that the younger the patient, the higher the risk of complications from vitrectomies."

[¶ 25] "[N]owhere in the records [it is] indicated that plaintiff's vitreous was the cause of any tear or detachment, as such, Dr. Chan should not have performed a vitrectomy."

[¶ 22] "Dr. Chan noted that the left [or primary] eye macula was still on, the retina only had a minor detachment, therefore, there was no need for such an aggressive and risky [first] surgery [in the form of vitrectomy, combined with other procedures]."

9

[* 9]

[¶ 29] Given the plaintiff's young age at the time, a competent surgeon would have performed the least invasive surgery possible, namely a scleral buckle, and *avoided entering the back of the eye [by way of vitrectomy] and causing further complications, scarring, and traction on the retina.* As [Dr. Chan's] expert notes, PVR is scar tissue which grows on or under the retinal surface and tends to contract like a rubber band, pulling the retina off. As Dr. Chan noted on [plaintiff's post-operative visit to him on April 11, 2014], due to plaintiff developing PVR he would be monitoring her closely. He could and should have simply avoided the complex surgery and development of PVR altogether."

[¶ 31] "[Plaintiff's] poor outcome was the result of an improper decision to perform [the first] surgery [that was] not indicated for [her]."

[¶ 35] "Whether or not Dr. Chan utilized proper surgical technique [in the course of the first surgery], it is my opinion within a reasonable degree of medical certainty that, had the correct procedure been performed in the first place, the [third and fourth surgeries] never would have been needed. In turn, plaintiff would not have suffered a choroidal hemorrhage [in the course of the fourth surgery]."

Plaintiff's retinal expert's affirmation, ¶¶ 24, 25, 22, 29, 31, and 35 respectively (emphasis added).

"In order not to be considered speculative or conclusory, expert opinions in opposition should address specific assertions made by the movant's experts, setting forth an explanation of the reasoning and relying on specifically cited evidence in the record." *Tsitrin v. New York Community Hosp.*, 154 A.D.3d 994, 62 N.Y.S.3d 506 (2d Dept. 2017) (internal quotation marks omitted). Contrary to Dr. Chan's contention, the foregoing opinions by plaintiff's retinal expert as to *the first surgery* were neither speculative nor conclusory and were supported by the record before the Court at the prior motions.[10] *See Schmidt v. Bangiyev*, 210 A.D.3d 924, 178 N.Y.S.3d 212 (2d Dept. 2022); *Roca v. Perel*, 51 A.D.3d 757, 859 N.Y.S.2d 203 (2d Dept. 2008). "[W]here [, as here,] the parties adduce

---

[10] *See* Dr. Chan's in-office progress note, dated April 4, 2014; Dr. Chan's optical coherence tomography-macular report of April 4, 2014; the NYEEI "non-block time" procedure form, dated April 4, 2014; the Adult Pre-Operative Medical Evaluation form, dated April 4, 2014; the Admitting Note & Pre-Surgical Orders, dated April 4, 2014; plaintiff's NYEEI chart for the first surgery at NYEEI's records, pages 013-017, 020, 022-063, 069-088; and Dr. Chan's deposition testimony.

[* 10]

conflicting competent medical expert opinions, summary judgment is not appropriate, as such credibility issues can only be resolved by the trier of fact." *Sessa v. Peconic Bay Med. Ctr.*, 200 A.D.3d 1085, 159 N.Y.S.3d 126 (2d Dept. 2021); *Kunic v. Jivotovski*, 121 A.D.3d 1054, 995 N.Y.S.2d 587 (2d Dept. 2014).

### Reargument of Dr. Chang's Prior Motion

The remaining branch of plaintiff's motion sought leave to reargue Dr. Chang's prior motion. Leave to reargue Dr. Chang's prior motion is granted and. upon reargument. the Court adheres to its original determination for additional reasons.

"[T]he threshold question in determining liability is whether the defendant owed plaintiff a duty of care. The question is a legal one for this Court to resolve, taking into account common concepts of morality, logic and consideration of the social consequences of imposing the duty." *McNulty v. City of New York*, 100 N.Y.2d 227, 762 N.Y.S.2d 12 (2003) (internal quotation marks omitted). "Although physicians owe a general duty of care to their patients, that duty may be limited to those medical functions undertaken by the physician and relied on by the patient." *Cooper v. City of New York*, 200 A.D.3d 849, 157 N.Y.S.3d 542 (2d Dept. 2021) (internal quotation marks omitted), *lv. denied* 38 N.Y.3d 908, 168 N.Y.S.3d 719 (2022).

Here, Dr. Chang, a general ophthalmologist, established his prima facie entitlement to judgment as a matter of law by presenting evidence establishing that he did not owe a duty of care to plaintiff for retinal treatment that she received from independently practicing vitreoretinal surgeon Dr. Chan. In that regard, Dr. Chang submitted evidence, including plaintiff's medical records from Dr. Chan and NYEE (as well as the deposition testimony of plaintiff and Dr. Chan), which established that Dr. Chang, as a general ophthalmologist, played no role in plaintiff's retinal treatment by Dr. Chan, and that he owed no duty to supervise Dr. Chan's retinal treatment. *See Cooper v City of New York*, 200 A.D.3d 849; *McAlwee v. Westchester Health Assoc., PLLC*, 163 A.D.3d 549, 80 N.Y.S.3d 401 (2d Dept. 2018).

In opposition to Dr. Chang's prima facie showing on his prior motion, plaintiff failed to raise a triable issue of fact. Although plaintiff presented the affirmation of an expert in general ophthalmology who opined (in ¶ 18 of his/her affirmation) that Dr. Chang had a duty to

11

supervise Dr. Chan because he (Dr. Chang) "undertook to co-manage [plaintiff's] ocular condition with Dr. Chan, which included numerous pre-operative and post-operative evaluations of [her]," the Court does not find that opinion probative because the question of whether a physician owes a duty to a patient is "not an appropriate subject for expert opinion." *Corujo v. Caputo*, 224 A.D.3d 729, 205 N.Y.S.3d 174 (2d Dept. 2024) (internal quotation marks omitted).

Plaintiff's citation to Dr. Chang's deposition testimony to the effect that he owed her a duty to continue monitoring her retina after his referral of her to Dr. Chan, was misleading. Although Dr. Chang testified that "it [was] [his] responsibility [for plaintiff's retinal care] as well," he immediately qualified his testimony by noting that he had "referred [plaintiff] to a retinal specialist. So[,] she's at a better care than what I can provide. That's the reason I referred her to a retina specialist."[11]

Accordingly, plaintiff failed to raise a triable issue of fact that Dr. Chang assumed a duty of care to her with respect to her retina or undertook a duty to supervise Dr. Chan in the latter's treatment of her retina. *See McAlwee v. Westchester Health*, 163 A.D.3d 549.

### Reargument of NYEEI's Prior Motion

As relevant to NYEEI, the prior order held, as follows:

"... Dr. Chan and NYEEI failed to establish prima facie the absence of any departure from good and accepted medical practice or that ... plaintiff was not injured thereby as to [her] fifth operation, performed on May 13th [,] or that there was informed consent as to the type of anesthesia used.

The anesthesiologist provided by NYEEI, Dr. Olga Chernobelsky, never had a discussion with the plaintiff regarding the type of anesthesia that would be used. In his deposition, Dr. Chan testified that general anesthesia was an option, though it is considered less safe. Plaintiff experienced pain during the prior surgeries performed by Dr. Chan and there is no evidence that she was advised that general anesthesia may have been an option, nor was she given the opportunity to make an informed decision regarding same. The May 13th

---

[11] Dr. Chang's deposition tr at page 51, lines 4-8. See also Dr. Chang's deposition tr at page 52, lines 4-5 ("I do not believe [that *not* examining plaintiff's retina was a departure from the standard of care on his part] ... because she's under the active care of Dr. Chan, a retina specialist."

12

operation was lengthier than the prior operations, and no provision was made by Dr. Chan or NYEEI to ensure that an anesthesiologist [rather than a nurse anesthetist] was available for the duration of the operation.

NYEEI argued that it is not liable for the anesthesiologist [Dr. Chernobelsky] as she was part of a separate medical corporation. There is no merit to that argument inasmuch as NYEEI provided the anesthesiologist; the doctors are located in NYEEI and work exclusively for NYEEI. Dr. Chan did not have a choice as to the anesthesiologist provided. Issues of fact remain as to whether Dr. Chan was advised that an anesthesiologist would not be available after 3:00 p.m. [when Dr. Chernobelsky signed off] and whether he agreed to proceed with coverage by a[n anesthetic] nurse who lacked authority to revise the anesthesia plan.

Dr. Chan and NYEEI also failed to demonstrate that plaintiff was not injured as a result of the failure to have given her the option of general anesthesia and/or the failure to provide a qualified anesthesiologist for the duration of the [fifth] operation. Questions remain as to whether the hemorrhages that were found during the operation, that led to plaintiff's total loss of vision in her left eye, were caused by plaintiff's movements in reaction to pain due to insufficient anesthesia."

Prior Order, pages 10-11.

In seeking leave to reargue, NYEEI advanced three points, first, that the Court failed to fully address its contention that NYEEI was not vicariously liable in connection with *the fifth surgery* for the alleged acts/omissions of Dr. Chernobelsky and/or NA Phipps, the alleged employees of East Manhattan Anesthesia Partners ("EMAP"), under the holdings of *Sampson v. Contillo*, 55 A.D.3d 588, 865 N.Y.S.2d 634 (2d Dept. 2008), and *Dragotta v. Southampton Hosp.*, 39 A.D.3d 697, 833 N.Y.S.2d 638 (2d Dept. 2007); second, that the Court failed to address NYEEI's previous contention that it was not vicariously liable for the alleged acts/omissions of Dr. Chan, as plaintiff's private physician. for *the fifth surgery*; and third, that the Court failed to address its previous contention that plaintiff had no valid claims against it

13

[* 13]

relating to the care and treatment which plaintiff received at NYEEI *before* the fifth surgery. Leave to reargue is granted in the Court's discretion to address NYEEI's contentions.[12]

It is legally incorrect for NYEEI to point to plaintiff as the party who, in opposition to its prior motion, bore the initial burden of persuasion on the question of whether it was (or was not) vicariously liable for the alleged acts/omissions of Dr. Chernobelsky and/or NA Phipps in connection with *the fifth surgery*. The initial burden of persuasion always lay with NYEEI. In its prior motion, NYEEI failed to meet its initial burden of persuasion because (in addition to the reasons set forth in the prior order) it did not submit (with its prior motion) its contract with EMAP and/or an affidavit from a representative of EMAP regarding the relationship between EMAP and NYEEI. NYEEI's reliance on Dr. Chernobelsky's and NA Phipps' respective deposition testimony that they were employed by EMAP at the time of *the fifth surgery*, was unavailing because such testimony (without any supporting, corroborating documentation) failed to establish the true nature of their relationship either with EMAP or with NYEEI, or both. In fact, plaintiff's consent form to *the fifth surgery* appeared on NYEEI's (rather than on EMAP's) letterhead, thus further undermining NYEEI's contention that EMAP (rather than NYEEI itself) was providing her with the MAC. Accordingly, NYEEI failed to demonstrate, prima facie, that plaintiff entered its operating room for *the fifth surgery* with the intent of seeking anesthesiology from EMAP privately (rather than NYEEI itself), and that Dr. Chernobelsky and NA Phipps did not have apparent or ostensible agency of NYEEI. *See Sessa v. Peconic Bay Med. Ctr.*, 200 A.D.3d 1085, 159 N.Y.S.3d 126 (2d Dept. 2021); *Fuessel v. Chin*, 179 A.D.3d 899, 116 N.Y.S.3d 395 (2d Dept. 2020).

NYEEI's reliance on *Sampson v. Contillo*, 55 A.D.3d 588, and *Dragotta v. Southampton Hosp.*, 39 A.D.3d 697, was unavailing. In each of those cases (unlike the instance here), the movant hospital demonstrated "its prima facie entitlement to judgment as a matter of law on the issue of its vicarious liability by establishing that [a particular physician or a group of physicians] was not its employee [or were not its employees], but was part of an

---

[12] NYEEI's motion for leave to reargue was timely, having been served within thirty days after service of the prior order with notice of entry. *See* CPLR 2221 (d) (3).

14

independent group of [specialists] which billed its patients [or all patients at the hospital] directly [or separately] for its services." *Sampson v. Contillo*, 55 A.D.3d 588; *Dragotta v Southampton Hosp.*, 39 A.D.3d 697. Here, however, NYEEI failed to meet that initial burden of persuasion.

On reargument, the Court finds that plaintiff raised a triable issue of fact to be determined by the jury as to whether NYEEI was vicariously liable for the alleged acts/omissions of Dr. Chan in connection with *the fifth surgery*. Because NA Phipps was not supervised by an anesthesiologist during the *fifth* surgery, she was effectively under the control of Dr. Chan. Under such circumstances, there are questions of fact as to whether NA Phipps had a responsibility to exercise independent medical judgment, whether she deviated from good and accepted practice as a nurse anesthetist in failing to exercise independent judgment, whether she was obligated to intervene or call for help when plaintiff became restless and/or was screaming with pain (as plaintiff so testified) in the course of *the fifth surgery*, and whether such deviations were a proximate cause of plaintiff's injuries. *See Macancela v. Wyckoff Hgts. Med. Ctr.*, 176 A.D.3d 795, 109 N.Y.S.3d 411 (2d Dept. 2019); *Jagenburg v Chen-Stiebel*, 165 A.D.3d 123, 985 N.Y.S.3d 558 (2d Dept. 2018).

The Court finds that plaintiff had no valid claims against NYEEI relating to the care and treatment which plaintiff received at NYEEI *before* the fifth surgery.

The Court considered the parties' remaining contentions and found them either moot or unavailing in light of its determinations. All relief not expressly granted herein is denied.

15

## Conclusion

Based on the foregoing, it is

**ORDERED** that the branch of plaintiff's motion to reargue as to Dr. Chan's prior motion is *granted*, and, upon reargument, the second decretal paragraph of the prior order (at the top of page 12) is amended and restated to read in its entirety as follows:

> **ORDERED** that Ian Chan, M.D. and Ian Chan, M.D., P.C.'s motion is *granted only* as to plaintiff's negligence, medical malpractice, and informed-consent claims as against them related to treatments and surgeries from April 7, 2014 (plaintiff's first post-operative visit following the first surgery), through (and including) the second surgery of December 9, 2014, further through (and including) the third surgery of January 16, 2015, and lastly through (and including) the fourth surgery of February 27, 2015, but is *denied* as to plaintiff's negligence, medical malpractice, and informed-consent claims as against them related to treatments and surgeries: (1) from April 4, 2014 (plaintiff's initial office visit) through and including the first surgery of April 6, 2014; and (2) from February 28, 2015 (plaintiff's first post-operative visit following the fourth surgery) and through (and including) the fifth surgery performed of May 13, 2015, together with plaintiff's follow-up with Dr. Chan after the fifth surgery, and it is further

**ORDERED** that the branch of plaintiff's motion to reargue as to Dr. Chang's prior motion is *granted*, and, upon reargument, this Court adheres to its prior order granting Dr. Chang's summary judgment motion, and it is further

**ORDERED** that, NYEEI's motion to reargue is *granted*, and upon reargument, the third decretal paragraph of the prior order (at page 12) is amended and restated to read in its entirety as follows:

> **ORDERED** that New York Eye & Ear Infirmary of Mount Sinai's motion for summary judgment is *granted to the extent* of dismissing all of plaintiff's

16

[* 16]

claims as against it relating to her care and treatment before the fifth surgery of May 13, 2015; and the remainder of its motion is *denied*, and it is further

**ORDERED** that the caption is amended to read as follows:

-----------------------------------------------------------------X

JIAN Y. LIN,

Plaintiff,

-against-

IAN CHAN, M.D., IAN CHAN, M.D., P.C, and
NEW YORK EYE & EAR INFIRMARY OF MOUNT SINAI,

Defendants.

-----------------------------------------------------------------X

; and it is further

**ORDERED** that plaintiff's counsel shall electronically serve a copy of this Decision and Order with notice of entry on defendants' respective counsel and shall electronically file an affidavit of service thereof with the Kings County Clerk, and it is further

**ORDERED** that all parties shall appear remotely for an Alternative Dispute Resolution Conference on July 30, 2024, at 11 a.m.

This constitutes the Decision and Order of the Court on reargument.

ENTER,

J. S. C.

HON. GENINE D. EDWARDS

17